RICHARD G. HESTON (SBN 90738)
*Lead Counsel*
*rheston@hestonlaw.com*
HALLI B. HESTON (SBN 90737)
*Co-Counsel*
*hheston@hestonlaw.com*
BENJAMIN R. HESTON (SBN 297798)
*Of Counsel*
ben@nexusbk.com
Heston & Heston, Attorneys at Law
3090 Bristol Street, Suite 400
Costa Mesa, California 92626
Tel: (949) 222-1041
Fax: (949) 222-1043

Attorneys for Plaintiff

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

| | |
|---|---|
| In re:<br><br>TRAVIS WEBB,<br><br>Debtor. | **CASE NO.: 8:26-BK-10525-SC**<br><br>**CHAPTER 7**<br><br>**ADV NO.:** [TO BE ASSIGNED BY COURT] |
| RICHARD A. MARSHACK, Chapter 7 Trustee,<br><br>Plaintiff,<br><br>**V.**<br><br>KACEY TAORMINA; WILLIAM COSMO TAORMINA; CYNTHIA LYNN TAORMINA; AND DOES 1 THROUGH 20, INCLUSIVE,<br><br>Defendants. | **COMPLAINT TO AVOID FRAUDULENT TRANSFER, FOR DECLARATORY RELIEF, AND FOR RECOVERY OF PROPERTY**<br>**(11 U.S.C. §§ 544(B), 550, 551; CAL. CIV. CODE §§ 3439.04, 3439.05 ET SEQ.)**<br><br>Status Conference<br><br>Date: [DATE AND TIME TO BE SET BY COURT]<br>Time:<br>Location: 411 W. Fourth St., Ctrm. 5C<br>Santa Ana, CA 92701 |

///

///

///

Plaintiff Richard A. Marshack, Chapter 7 Trustee ("Trustee"), alleges as follows:

## I. JURISDICTION, VENUE, AND PARTIES

1. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (H), (K), and (O), including proceedings to avoid and recover fraudulent transfers and to determine interests affecting property of the estate. Venue is proper pursuant to 28 U.S.C. § 1409 because the underlying bankruptcy case is pending in this District.

3. Plaintiff Richard A. Marshack is the duly appointed and acting Chapter 7 trustee in the bankruptcy case of debtor Travis B. Webb, also known as and identified in certain records as Webb Travis ("Debtor"). Debtor commenced the Bankruptcy Case on February 20, 2026, Case No. 8:26-bk-10525-SC.

4. Defendant Kacey Taormina ("Kacey") is Debtor's former spouse and was, at all relevant times, an insider within the meaning of 11 U.S.C. § 101(31).

5. Defendants William Cosmo Taormina and Cynthia Lynn Taormina are Kacey's parents. Trustee is presently unaware of the true names and capacities of DOES 1 through 20 and sues them by fictitious names, subject to amendment when their identities and capacities become known.

## II. GENERAL ALLEGATIONS

6. During their marriage, Debtor and Kacey acquired residential real property commonly known as 459 Abbie Way, Costa Mesa, California 92627, Orange County Assessor's Parcel Number 117-372-21 (the "Abbie Way Property"), legally described as:

Lot 21 of Tract No. 1174, in the City of Costa Mesa, County of Orange, State of California, as shown on a map recorded in Book 37, Page 26 of Miscellaneous Maps, in the Office of the County Recorder of Orange County, California.

7. The Abbie Way Property was acquired in approximately September 2017 for approximately $1,795,000. A copy of the recorded acquisition deed is attached as Exhibit A. The purchase was financed in part by a Wells Fargo loan in the approximate original amount of $1,100,000, secured by a recorded deed of trust or mortgage instrument attached as Exhibit B.

8. Title to the Abbie Way Property was held in the names of Debtor and Kacey as community property. The Abbie Way Property was a substantial marital asset and, by 2023, had materially appreciated in value and contained substantial equity.

9. Debtor and Kacey separated in July 2023.

10. On or about October 5, 2023, before entry of any dissolution judgment, Debtor and Kacey entered into a private Property Agreement concerning the Abbie Way Property, business interests, marital assets, liabilities, and related economic rights. A copy of the Property Agreement is attached as Exhibit C.

11. The Property Agreement addressed, among other matters, the Abbie Way Property and business interests associated with Workhorse & Unicorn LLC dba TURF.

12. The dissolution proceeding was filed in Orange County Superior Court in or about December 2023.

13. Before entry of a final dissolution judgment, Debtor executed a quitclaim deed transferring his interest in the Abbie Way Property to Kacey. The deed was recorded on or about January 4, 2024, as Orange County Recorder Instrument No. 2024000002059, and is attached as Exhibit E.

14. Public transaction records identify the quitclaim deed as a non-arm's-length transfer. At the time of transfer, no final dissolution judgment had been entered, and no contested judicial valuation had determined the value of Debtor's interest.

15. Trustee does not allege that marital settlement agreements or dissolution judgments are inherently avoidable or improper.

16. Trustee alleges that this transfer is avoidable because it was privately negotiated, structured, and substantially implemented before final judicial adjudication, involved insider parties, employed disputed valuation assumptions, and resulted in Debtor transferring valuable real property without receiving reasonably equivalent value.

17. The parties' stipulated dissolution judgment was entered on or about July 15, 2024. A copy of the judgment, including material incorporated property terms, is attached as Exhibit F.

18. A May 2024 amendment or related property agreement concerning TURF and related terms is attached as Exhibit D.

19. Debtor testified under oath that, at or about the time of transfer, the Abbie Way Property was worth "easily over $3 million," and probably closer to $3.2 million or $3.4 million.

20. Debtor further testified that the balance owing on the Wells Fargo first deed of trust was approximately $800,000.

21. Based upon Debtor's testimony, Trustee alleges that the Abbie Way Property had estimated net equity of approximately $2.6 million at or about the time of transfer.

22. Debtor also testified that, to his knowledge, he had not executed and was unaware of any additional consensual liens encumbering the property at the relevant time.

23. Debtor testified that he did not believe the transaction was fair, that he surrendered his interest in the residence to end emotional conflict and avoid further disputes with Kacey and her family, and that he believed he did not receive fair value for his share of the marital community.

24. Kacey is a real estate broker with a business degree. She testified that she managed the parties' finances during the marriage and considered herself the more financially sophisticated spouse.

25. Kacey testified that her father contributed approximately $500,000 toward the purchase and later funded substantial improvements to the Abbie Way Property, with the remodel costing approximately $800,000 to $900,000.

26. Kacey testified that there were notes or written documentation concerning money advanced by her father, that the notes were revised over time, and that payments were made electronically.

27. Kacey did not clearly recall whether the alleged family debt was secured by a recorded second deed of trust. She testified that she hoped it had been recorded and that records could be located.

28. The Property Agreement recited that the Abbie Way Property was encumbered by the Wells Fargo first deed of trust and by a second deed of trust or loan from Kacey's parents.

29. Trustee is informed and believes that public real property records do not disclose any contemporaneously recorded deed of trust or perfected real property security instrument in favor of William Taormina, Cynthia Taormina, or any related insider securing the alleged family debt at or before the January 2024 transfer.

30. Trustee alleges that the alleged family debt, if it existed, was unsecured, insider-held, imperfectly documented, unperfected, or otherwise not secured by a perfected lien against the Abbie Way Property at or before the challenged transfer.

31. Trustee further alleges that the alleged family debt was used directly or indirectly to diminish, offset, discount, or eliminate equity otherwise attributable to Debtor's ownership interest.

32. Kacey testified that there was a spreadsheet or analysis concluding that there was "basically no equity" after repayment of debts.

33. Kacey also testified that no formal appraisal was obtained. She described relying on Zillow, neighborhood sales, and her own familiarity as a broker with nearby property values.

34. Trustee alleges that the "no equity" conclusion depended on treating asserted insider family debt as reducing value, notwithstanding the disputed and apparently unperfected secured status of that debt.

35. Workhorse & Unicorn LLC dba TURF ("TURF") was a personal training gym business operated from leased premises in Newport Beach, California.

36. Debtor and Kacey acquired or took over the existing gym business from its prior operators, operated it through Workhorse & Unicorn LLC, and each held a 50% ownership interest in the business.

37. Kacey testified that she contributed money toward remodeling, equipment, improvements, and operating expenses for TURF, while Debtor principally operated the business and trained clients.

38. TURF was one of the business interests addressed in the parties' property agreements and dissolution-related negotiations.

39. The value of TURF was uncertain, disputed, and dependent upon its continued operation as a personal-service business in leased premises.

40. The Property Agreement referenced an approximate value of $600,000 for TURF, but Kacey testified that she did not know how to value gyms, was not a business valuation expert, and understood the value to be based upon Debtor's asserted valuation and revenue assumptions.

41. Trustee alleges that any nominal or asserted value of TURF was further reduced by lease obligations, operating expenses, personal guaranty exposure, disputed debt, and later secured claims against gym equipment and business assets.

42. On or about June 14, 2024, a UCC-1 Financing Statement was filed naming Workhorse & Unicorn LLC dba TURF as debtor and William Joshua Dodsworth as secured party.

43. The UCC filing purported to encumber substantially all TURF business assets, including inventory, equipment, fixtures, leasehold interests, accounts, tangible and intangible property, insurance proceeds, licenses, and related assets.

44. By approximately November 2025, TURF business assets were allegedly repossessed, seized, foreclosed upon, transferred, or otherwise taken over pursuant to asserted secured rights, and Debtor no longer retained the benefit of the business assets that allegedly formed a material component of the consideration allocated to him.

45. Trustee alleges that the overall economic effect of the transaction was that Debtor transferred an interest in appreciating residential real property while receiving business-related rights and obligations burdened by contingent liabilities, operational exposure, lease obligations, guaranty exposure, disputed debt, and later loss of business assets.

46. Following Debtor's transfer, Kacey became sole record owner of the Abbie Way Property.

47. On or about August 25, 2025, additional financing in the approximate amount of $250,000 was placed against the Abbie Way Property. Public records identify the lender as a Taormina-related trust or insider entity, and a copy of the recorded instrument is attached as Exhibit G.

48. Trustee alleges that the later insider financing supports an inference that insider debt arrangements existed, evolved, were memorialized, leveraged, restructured, or asserted in a manner affecting valuation, equity treatment, or post-transfer economic benefit associated with the Abbie Way Property.

49. Upon information and belief, William and Cynthia Taormina participated in, influenced, financed, benefited from, secured, or claimed interests arising from financial arrangements affecting the Abbie Way Property, including alleged insider indebtedness and later financing transactions.

50. The Abbie Way Property is unique real property. Trustee seeks recovery of the transferred property interest itself where feasible.

51. Trustee alleges that avoidance and recovery of the transfer would restore the transferred interest to property of the estate pursuant to 11 U.S.C. §§ 541, 550, and 551.

52. Trustee seeks recovery of value only in the alternative, if recovery of the transferred property interest is impracticable, inequitable, impaired, or otherwise unavailable.

53. At the time of the challenged transfer, Debtor was operating a leveraged business, faced lease and guaranty exposure, business debt, creditor pressure, marital separation pressure, and contingent obligations.

54. By the Petition Date, Debtor's schedules reflected substantial unsecured debt, business-related liabilities, consumer obligations, and constrained net financial condition.

55. At the time of transfer, Debtor was insolvent, became insolvent as a result of the transfer, possessed unreasonably small capital, or intended or reasonably should have believed he would incur debts beyond his ability to pay as they became due.

56. Actual unsecured creditors existed whose rights were adversely affected by the challenged transfer. Pursuant to 11 U.S.C. § 544(b), Trustee succeeds to the rights of such creditors under applicable California law.

57. Copies of the agreements, amendments, stipulated judgment, recorded deeds, financing instruments, and other writings specifically referenced in this Complaint are attached as lettered exhibits and incorporated by reference.

## III. FIRST CLAIM FOR RELIEF

### Avoidance Under Applicable State Law - 11 U.S.C. § 544(b); Cal. Civ. Code §§ 3439.04, 3439.05

58. Trustee realleges and incorporates paragraphs 1 through 57. At all relevant times, one or more creditors existed holding allowable unsecured claims against Debtor who possessed rights under California law to challenge the transfer, and Trustee succeeds to those creditor rights pursuant to 11 U.S.C. § 544(b).

59. The challenged transfer is avoidable under California Civil Code section 3439.04(a)(1) because Debtor transferred his interest in the Abbie Way Property with actual intent to hinder, delay, or defraud creditors. Circumstances supporting that inference include the transfer to an insider before entry of a dissolution judgment, the absence of a contested valuation, the treatment of disputed family debt as reducing equity without a contemporaneously recorded deed of trust, the asserted disparity between the real property interest conveyed and the consideration received, and Debtor's financial and business pressures. The transfer is also avoidable under California Civil Code sections 3439.04(a)(2) and 3439.05 because Debtor did not receive reasonably equivalent value and was insolvent, became insolvent, was inadequately capitalized, or intended or reasonably should have believed he would incur debts beyond his ability to pay.

## IV. SECOND CLAIM FOR RELIEF

### Declaratory Relief Regarding Family Debt and Property Interests

60. Trustee realleges and incorporates paragraphs 1 through 59. An actual controversy exists between Trustee and Defendants concerning the existence, amount, enforceability, secured status, perfection, priority, and legal effect of asserted family debt or other insider interests affecting the Abbie Way Property. Trustee disputes whether any alleged family debt was secured by a perfected lien at or before the challenged transfer and disputes whether such alleged debt could properly eliminate equity attributable to Debtor's transferred interest. Declaratory relief is necessary to determine the parties' respective rights and to avoid multiplicity of proceedings concerning estate recovery, valuation, lien characterization, and recoverable property interests.

## V. THIRD CLAIM FOR RELIEF

### Cancellation of Deed, Recovery of Property, and Alternative Money Judgment – (11 U.S.C. §§ 541, 544, 550, 551; Cal. Civ. Code § 3412)

61. Trustee realleges and incorporates paragraphs 1 through 60. The quitclaim deed recorded on or about January 4, 2024, as Orange County Recorder Instrument No. 2024000002059, clouds and impairs the bankruptcy estate's recoverable interest in the Abbie Way Property. Pursuant to California Civil Code section 3412 and the equitable powers of this Court, Trustee seeks cancellation, avoidance, nullification, or setting aside of the quitclaim deed and restoration of the transferred property interest to the estate. Trustee seeks recovery of the transferred property interest itself where feasible, and alternatively seeks judgment for the value of the transferred interest, including estimated net equity of approximately $2.6 million, if property recovery is impracticable, inequitable, impaired, or otherwise unavailable.

## VI. FOURTH CLAIM FOR RELIEF

### Recovery and Preservation of Avoided Transfer - 11 U.S.C. §§ 550 and 551

62. Trustee realleges and incorporates paragraphs 1 through 61. Kacey was the initial transferee of the transferred property interest within the meaning of 11 U.S.C. § 550(a)(1), and Trustee is informed and believes that William and Cynthia Taormina, individually, through trusts, financing arrangements, asserted insider debt, or later encumbrances, received benefits arising from the challenged transfer or possess interests traceable to it. Trustee is entitled, for the benefit of the estate, to recover the transferred property or, alternatively, its value, including estimated net equity of approximately $2.6 million, appreciation, proceeds, rents, profits, leverage, traceable value, and related economic benefits according to proof. Pursuant to 11 U.S.C. § 551, any avoided transfer, lien, interest, encumbrance, or obligation shall be preserved for the benefit of the estate.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Richard A. Marshack, Chapter 7 Trustee, requests judgment against Defendants, and each of them, as follows:

1. For judgment avoiding the transfer pursuant to 11 U.S.C. § 544(b) and California Civil Code sections 3439.04 and 3439.05;

2. For declaratory relief determining the existence, amount, enforceability, secured status, perfection, priority, nature, extent, validity, avoidability, and legal effect of any alleged family loan, insider debt, lien, trust interest, reimbursement claim, or related property interest affecting the Abbie Way Property;

3. For judgment cancelling, rescinding, avoiding, nullifying, and setting aside the quitclaim deed transferring Debtor's interest in the Abbie Way Property to Kacey, including the deed recorded on or about January 4, 2024, as Orange County Recorder Instrument No. 2024000002059;

4. For recovery, restoration, and preservation of the transferred ownership interest in the Abbie Way Property for the benefit of the bankruptcy estate pursuant to 11 U.S.C. §§ 541, 550, and 551;

5. Alternatively, for judgment against Defendants, and each of them, for the value of the transferred property interest, including estimated net equity of approximately $2.6 million, together with appreciation, proceeds, leverage, traceable value, rents, profits, and related economic benefits according to proof;

6. For preservation of avoided transfers, liens, interests, encumbrances, obligations, and recoverable rights for the benefit of the estate pursuant to 11 U.S.C. § 551;

7. For prejudgment interest according to proof and as permitted by law;

8. For costs of suit herein incurred; and

9. For such further declaratory, equitable, restitutionary, injunctive, legal, or other relief as the Court deems just and proper.

DATED: 9/24/2026

HESTON & HESTON
Attorneys at Law

By: /s/ Richard G.Heston
RICHARD G. HESTON
Attorneys for Plaintiff
Richard A. Marshack, Chapter 7 Trustee

**EXHIBIT DESIGNATIONS**

Exhibit A - Recorded deed by which Debtor and Kacey acquired title to the Abbie Way Property.

Exhibit B - Recorded Wells Fargo deed of trust or mortgage instrument.

Exhibit C - October 5, 2023 Property Agreement.

Exhibit D - May 2024 amendment or related property agreement concerning TURF and related terms.

Exhibit E - Recorded quitclaim deed transferring Debtor's interest to Kacey, recorded January 4, 2024, as Orange County Recorder Instrument No. 2024000002059.

Exhibit F - Stipulated judgment of dissolution entered July 15, 2024, including material incorporated property terms.

Exhibit G - Recorded August 2025 financing instrument concerning the approximate $250,000 Taormina-related encumbrance.